**SEASIDE VILLAGE, INC., a corporation of the State of Delaware, Petitioner, Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent, Appellee.**

Supreme Court of Delaware.

Submitted March 12, 1981.

Decided April 22, 1981.

Benton C. Tolley, Jr. (argued), of Tunnell & Raysor, Georgetown, for petitioner, appellant.

John P. Fedele (argued), Deputy Atty. Gen., Wilmington, for respondent, appellee.

Before HERRMANN, C. J., DUFFY and QUILLEN, JJ.

DUFFY, Justice:

In this tax case, Seaside Village, Inc. (Seaside) appeals from a judgment of the Superior Court approving a denial of the State Director of Revenue of a request under the provisions of 30 *Del.C.* §§ 1908 and 1911 for two corporate tax refunds. We affirm in part, and reverse in part.

### I

The facts are not in dispute.

Seaside sustained corporate net operating losses in fiscal years 1974 and 1975. Seeking to carry back the losses, pursuant to Internal Revenue Code, § 6411, to offset income earned in 1971 and 1972 and thereby

1. 30 *Del.C.* § 1198(e) states:
   "If the claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back, the claim may be made within the period which ends with the expiration of the thirtieth day of the fourth month

receive a refund of Federal taxes paid for those years, Seaside filed Form 1139, "Corporate Application For Tentative Refund," with the United States Department of the Treasury (Treasury Department) on September 15, 1974 and again on September 15, 1975. Seaside received tax refunds from the Treasury Department for 1971 and 1972, respectively, on December 5, 1974, and November 21, 1975.

In September 1976, pursuant to 30 *Del.C.* § 1911, Seaside filed with the Director of Revenue amended Delaware corporate income tax returns for fiscal years 1971 and 1972, claiming refunds for State taxes paid in those years by reason of the carryback of the 1974 and 1975 net operating losses. The Director of Revenue refused the refund application on the ground that, under 30 *Del.C.* § 1911, it was not timely filed.

The Tax Appeal Board agreed, holding that: (1) Seaside's application was time-barred under § 1911(a) because it was filed more than three years and six months after the deadline date for 1971 and 1972 tax returns, the years in which State taxes were allegedly overpaid, and (2) the longer limitations period of § 1911(b) was inapplicable because Seaside had not demonstrated any "change or correction" of Federal income taxes for 1971 and 1972 as required by that Section. The Superior Court affirmed the Tax Appeal Board and Seaside then docketed this appeal.

### II

Although the Delaware Code specifically provides for a tax refund resulting from the carryback of losses incurred by an individual taxpayer, 30 *Del.C.* § 1198(e),[1] there is not a corresponding provision for a corporation. Thus, if Seaside is to be permitted to carry back its 1974 and 1975 losses, and thereby become entitled to State tax refunds for 1971 and 1972, it must come with-

following the end of the taxable year of the net operating loss which resulted in such carry-back, or the period prescribed in subsection (c) of this section in respect of such taxable year, whichever expires later."

in the general terms of 30 *Del.C.* § 1911, which governs corporate tax refunds.

### A.

Subsection (a) of 1911 provides:

"Where there has been an overpayment of any tax imposed by this chapter for any income year, the amount of such overpayment may be credited against any liability in respect of any income tax or installment thereof (whether such tax was assessed as a deficiency or otherwise) on the part of the taxpayer who made the overpayment, and the balance shall be refunded to such taxpayer. Unless the taxpayer has theretofore filed a claim therefor with the Secretary of Finance, no such credit or refund shall be allowed after the expiration of 6 months following the expiration of the period during which the Secretary of Finance may, under § 1908 of this title, make an assessment (except in the case of a false or fraudulent return) of additional tax for such a year."

Under § 1908, the Secretary of Finance may make an assessment of additional tax for a given year "within 3 years after the last day prescribed for filing the return...." 30 *Del.C.* § 1908(a). The parties agree that (read together) §§ 1908(a) and 1911(a) impose a limitations period of three years and six months for filing a corporate tax refund claim. The present dispute concerns the proper starting date for that limitations period—is it the last date for filing a tax return for the year of alleged overpayment or is it the last date for filing a tax return for the year in which the loss was sustained?

Analogizing to the carryback loss procedure and time limitations provided for an individual taxpayer under Delaware law, see § 1198, supra, and for corporations as well as individuals under Federal law, IRC § 6511(d)(2)(A),[2] Seaside argues in this Court, as it did before the Superior Court, that the limitations period prescribed by § 1911(a) should begin to run from the year in which a loss is incurred. Since the corporation had losses in 1974 and 1975 and filed its amended returns with the Director of Revenue in September 1976, Seaside says that its refund claims are within the three-year, six-month limitation.

■ In our view, such a construction contravenes the plain language of §§ 1908(a) and 1911(a). Clearly, § 1911(a) refers to the year in which taxes were allegedly overpaid, and to no other year. The plain wording permits no other view. It follows that the Superior Court correctly concluded that any claim under § 1911(a) "must be filed within three years and six months after the last day prescribed for filing the return ... for the tax year for which such refund is claimed." And since Seaside admittedly did not file an amended tax return with the Director of Revenue until September 1976, which was more than three years and six months after the deadline date for filing tax returns for both 1971 and 1972, its refund claims are time-barred under § 1911(a).

### B.

We turn now to § 1911(b), which provides:

"A claim for refund shall be deemed to be filed within the period prescribed in subsection (a) of this section if based upon a change or correction of the taxable income reported for federal income tax purposes and is filed within 1 year after the taxpayer has agreed to such changes or corrections."

■ As we have previously noted, Seaside filed Federal tax refund claims with the Treasury Department in September

---

**2.** IRC § 6511(d)(2)(A) provides, in pertinent part:

"If the claim for credit or refund relates to any overpayment attributable to a net operating loss carryback ..., in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be that period with ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss ... which results in such carryback, or the period prescribed in subsection (c) in respect of such taxable year, whichever expires later ...."

1974 and September 1975, and received refunds in December 1974 and November 1975. Thereafter, Seaside filed the two amended State returns with the Director of Revenue in September 1976 for similar refunds. Based on this chronology, both parties agree that if § 1911(b) applies to this case, Seaside's claim for refund of 1972 State taxes is timely but that its claim for refund of 1971 taxes is time-barred because more than one year had expired after the 1974 "change" in Federal taxes for that year. The question for us, then, is whether § 1911(b) applies to this case.

The Director of Revenue contends that § 1911(b) is not applicable on the ground that there has not been a "change or correction of [Seaside's] taxable income reported for federal income tax purposes" within the meaning of that subsection. He says § 1911(b) contemplates "changes or corrections" which result from an audit conducted by the Internal Revenue Service upon a filing of a claim for refund under IRC § 6402.[3] Since Seaside filed applications for tentative tax refunds on Form 1139 pursuant to IRC § 6411,[4] which merely requires a "limited examination" before a refund is granted, an audit of Seaside has not been conducted. The Director therefore maintains that the refunds made to Seaside after the "limited examination" by IRS do not amount to "changes or corrections" of Federal taxable income within the ambit of § 1911(b). Furthermore, the Director argues, under IRC § 6411(b) the IRS is obliged to issue a refund on Form 1139 applications after the "limited examination," and so the IRS has performed a ministerial act only and has not initiated a change or correction in Seaside's taxable income to which Seaside could have "agreed," for purposes of § 1911(b).

Based upon our reading of § 1911(b), we think the Director's interpretation of that section is overly technical and, in effect, exalts form over substance. As we understand his view, it is bottomed on the premise that subsection (b) is only applicable to an audit situation, as when a taxpayer files a claim for refund under IRC § 6402. But the broad language of § 1911(b) is not expressly limited to an audit situation—indeed, the word "audit" nowhere appears. Moreover, IRC § 6411, which authorizes an application for a tentative refund under Form 1139, does not exclude the possibility of an audit. Finally, and most importantly, it appears to us that § 6411, in comparison to § 6402, merely provides a taxpayer with an expedited procedure for obtaining a refund of overpaid

---

3. IRC § 6402 states:

"In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person."

4. IRC § 6411 provides, in relevant part:

"(a) *Application for adjustment.*—A taxpayer may file an application for a tentative carryback adjustment of the tax for the prior taxable year affected by a net operating loss carryback provided in section 172(b) ... from any taxable year. The application shall be verified in the manner prescribed by section 6065 in the case of a return of such taxpayer, and shall be filed, on or after the date of filing of the return for the taxable year of the net operating loss ... from which the carryback results within a period of 12 months from the end of such taxable year
...."

(b) *Allowance of adjustments.*—Within a period of 90 days from the date on which an application for a tentative carryback adjustment is filed under subsection (a), or from the last day of the month in which falls the last date prescribed by law (including any extension of time granted the taxpayer) for filing the return for the taxable year of the net operating loss ... from which such carryback results, whichever is the later, the Secretary shall make, to the extent he deems practicable in such period, a limited examination of the application, to discover omissions and errors of computation therein, and shall determine the amount of the decrease in the tax attributable to such carryback upon the basis of the application and the examination, except that the Secretary may disallow, without further action, any application which he finds contains errors of computation which he deems cannot be corrected by him within such 90–day period or material omissions."

Federal taxes. In other words, when a taxpayer files either an application for tentative refund under IRC § 6411 or a claim for refund under IRC § 6402, which is accepted, the end result is the same: "changes or corrections" in Federal taxable income are made within the language of § 1911(b), whether that comes about before, after or without an audit. Consequently, any distinction based on whether the filing for a tax refund is made under IRC § 6411 or § 6402, or on whether an audit has been conducted, is not significant for purposes of 30 *Del.C.* § 1911(b). And in our view, the transmittal by the IRS and Seaside's acceptance of the refund checks constitutes sufficient "agreement" under § 1911(b).

Accordingly, we hold that § 1911(b) does apply to this case. Thus, although Seaside's application for refund of 1971 States taxes is time-barred, its application for refund of 1972 State taxes was timely filed.

Affirmed in part; reversed in part.